Good morning to everyone. Amy Jacks. I represent Mr. Johnson and Ms. Morrissey, seated at council table, represents Mr. Williams. And what we decided was that I'm going to go ahead and the argument doesn't really logistically split into two pieces. So I'm going to give the argument. If there are any specific questions as to the factual scenario related to Mr. Williams, Ms. Morrissey is here to address that. Sounds like a good plan. And if I may reserve two minutes. Sure, you bet. This case presents an issue of first impression in this circuit. 18 U.S.C. 3593A guarantees a capital defendant reasonable notice of the government's intent to seek that penalty. And the issue here is really what is reasonable notice and what is the remedy where the government fails to provide reasonable notice. In addition to discussing those issues, the court has also asked the parties to address whether this is even a matter that is appropriate for interlocutory appeal. So in this argument, what I plan to cover is that the government's notice of intent to seek death in this case, which was filed 75 days before what was being treated as the parties as the real go date for trial, was an unreasonable notice. Well, let me ask you this. Just to, I think we're all familiar, you know, we've spent a lot of time on this up to this point. In this case, capital counsel was appointed much earlier. Yes. And my question is that, and I think that we do have a split on in the circuits as to if you get to how to, how do you count the days, do you get to count the 75 or do you do the totality of the circumstances? But all right. So capital counsel is appointed. And how long, how long ago prior to trial was capital counsel appointed? Appointed for Mr. Johnson in November of 2005. All right. So my understanding, and you can disabuse me of any of this if I'm wrong, but obviously, so you're on notice that it's like the equivalent in state court, there's special circumstances, and are they going to go for LWOP or are they going to go for the death penalty? But you have capital counsel, all right, you're on notice that they're talking about it. Then there's a process that DOJ goes through, and the purpose of capital counsel is to try to talk, you know, is to prepare for trial, but also to try to talk them out of going forward with the death penalty, right? To point out the reasons that death shouldn't be sought. All right. And why are those reasons any different than what you would put on in a penalty phase of a trial? Well, first of all, I think there's a critical distinction between the state court death penalty process and the Federal Death Penalty Act. And with respect to the effect of the filing of the notice of intent to seek death, it's not just the government saying that they are going to seek death against your client, but it's also outlining the facts and circumstances, the statutory and non-statutory aggravators, that form the basis or the outline of their case in aggravation. Okay. But you, but the thing is, we're not appointing you to sit on your hands. We're appointing you to save this person's life, if that's the case. And so my question is, why is that any, everything that you're doing to talk them out of doing the death penalty is all work that's transferable to defending against the death penalty if your client's convicted? I would agree. And the process based on Wiggins has to start early and has to be very comprehensive. I think the problem is, is until the government actually files their notice of intent to seek death, you're not able to identify what specific factors, in particular the non-statutory aggravators that are the fact-intensive aggravators. You're not able to identify those which the government intends to present evidence on. And until that notice of intent to seek death is filed, you're not able to, for example, challenge the legal theory behind what may be their non-statutory aggravators. You're not able to challenge discovery issues related to the discovery of non-statutory aggravators. Well, no, you don't do the actual challenges, but aren't you anticipating that, and you're trying to dig up everything on your client, both factually why this case shouldn't be a death penalty case and also why your client, given who he or she is, what their life span, what their record is, all of that, why the death penalty isn't appropriate against your client? Of course, but until you actually have notice of what they're going to use, you don't know where your digging falls short, where your digging may not have, or where there's a novel legal theory being proposed. In this case, we had four defendants, and it was a difficult issue to determine if they're going to go for death on one person or two people or three people or four people, what are the logistics of the capital trial? What are the conflicts between the defendants at guilt and at penalty phase? What are the issues where one defendant may have particularly strong mitigation in one area that might become aggravation for your client if you don't have it? And I think the point is until that notice of intent is, the notice of intent to seek death really triggers an avalanche of issues that hopefully counsel is preparing to address in getting ready for the trial, but you can't really address it specifically until the government announces what their intent is and what their non-statutory aggravators are. Okay, and that happened in May of 2008. Correct. And we still don't have a trial yet. I mean, why haven't you had sufficient time to do all of what you've just described that you have to do? Well, what happened was the trial, when the government filed their notice of intent to seek death on May 29, 2008, we had a trial date of August 12, 2008. We had a pending motion to sever one defendant, Mr. Johnson, from the other defendants, and we had some disclosures that had been made by the government of protected witnesses whose identity was ordered disclosed 120 days before trial, and we were proceeding towards trial in that manner. At the time that the court called a status conference and replaced counsel for one defendant, that's when the notice of intent to seek death had been filed, and at that point we informed the court we were intending on filing a motion to strike that notice because of its untimely filing. Judge Liu asked, you know, if we proceed with a capital trial, assuming I don't strike the notice of intent to seek death, and if we proceed with a capital trial, will you be ready to begin a capital trial on August 12? And the fact was we wouldn't have been. I guess I didn't ask my question right, I guess. You make a very good case that you need sufficient time to meet the death penalty issues. You've been given sufficient time to meet the death penalty issues. The trial, the notice was filed in May of 2008, and the judge sets a trial off for March of the following year. Well, the continuance was the trial was moved from August 12 to March 17, solely because of the filing of the notice of intent to seek death. Okay, but you got the time. I mean, this is not a game show. I mean, you know, the idea is to make sure you have the time. It's not some. Well, I understand. And I guess the point is that Mr. Johnson had objected on three prior occasions to continuing the trial date. I think he started objecting, and we were actually, you know, if the proper disclosures had been made along the way, we're ready to proceed a trial within 120 days of August 24, 2007, when the judge made the ruling in regards to the pre-trial disclosures of protected witnesses. Well, you're essentially arguing a selfish choice. You're saying you've got the right to a speedy trial and a defendant's got a right to have prepared counsel. And when they notify you late in the game, you have to pick, you have to give up one to get the other. Well, I guess I don't think that a defendant in Mr. Johnson and Mr. Williams' position should be in the position of having to give up one. Well, that's why you're saying it's a selfish choice. You can't, you know, you. And so it would be ideal for you to make this some sort of structural error, and if they don't give you enough time, that then to just, that if the 75 days that you shouldn't have to resort to asking for a continuance to be prepared. Well, I think the point is 75 days, given the facts and circumstances of this case was not enough time to address the issues that were apparent from the filing of the death notice and continue to prepare for the trial in which witness disclosures and things of that nature were not going to be made until 45 days before trial. Well, essentially you want your speedy trial to trump getting, if 75 days isn't enough, then the speedy trial rights should trump that, and then the death penalty should be stricken, right? I guess the point is that the government knew, had our input on whether or not the death penalty should be sought in this case back in April of 2007. They sat on that for over a year before filing the death notice, and while the death notice gives the defense a lot of information about what specifically the government's legal and factual case in aggravation is, it's not a difficult thing for the government to file in terms of outlining what it is that they feel, what factual issues they feel should, Well, if we gave you what you want in terms of the courts telling the government a specific time that they have to decide that, would we be entrenching on, you know, crossing over the judicial to the executive? I mean, because it strictly is an executive decision as to whether to file, you know, to go for the death penalty. And it's a judicial decision to control, and judicial discretion to control the proceedings and how the trial is going to progress. And I think at some point the court needs to assert its power to control the proceedings. I mean, the fact is here, Mr. Johnson and Mr. Williams are not the only people prejudiced by this 13-month unexplained delay in announcing the government's intent to seek death. I mean, we have victims' families, we have witnesses that are being inconvenienced, we have defendants' families that are facing the uncertainty of whether there's going to be a death prosecution. But, you know, Section 3593 doesn't state that insufficient notice has to be vindicated before trial. No. And that's the issue that I think the court has asked us to address with respect to collateral review. And I think the point is, is if you wait until after trial to address the right, then the right, many defendants lose the effect of the right. And I think a perfect, I laid out three examples, I think, in our reply brief on pages 7 and 8. But for an example is one choice that Mr. Johnson and Mr. Williams could have made when the government announces their intent to seek death in 75 days before trial is, you know what, we've got a strong case, we're going to beat it at the guilt phase, let's just go even though we're not ready. And I think that's a case where a defendant is being forced into a trial that could potentially be a trial for his life without reasonable notice. And that's the right that Congress seeks to protect. But I'd say if that happened, then you'd have a legitimate gripe. The problem is that's not what happened. You had almost a year to get ready. You're making a 75-day argument when you've really had a year. Well, first of all, let me see if I can keep my points straight. I think that it would be an unreasonable decision for counsel in a capital case to follow the scenario that I just described. Hey, we've got a strong case. Let's go ahead and go to trial. We're never going to get to the penalty phase. I think it's just unrealistic in light of statistics about federal death penalty trials and how many defendants are actually acquitted. Even if you believe you have a strong case, it's a risk that a defendant shouldn't have to take. In discussing it with other lawyers, someone compared it to playing a game of Russian roulette. If you put the gun to your head and pull the trigger and no bullet comes out, does that mean there hasn't been a harm? I'm worried about if you win. I mean, if you're right about this, then the government virtually has to ask for the death penalty in every potential capital case without the kind of deliberation and reflection that you would hope they would have, or otherwise you're going to come by and kick them out because they didn't do it within the next number of days. I don't think that's the case. I think this case presents an issue where we have the charges against the defendants and the government's theory of the case being essentially the same for almost three years before they announce their notice of intent to seek death. You look at the other cases looking at these types of issues, and you're looking at a much shorter timeline. There is a delay of 13 months here between April of 2007 and the filing of the notice of intent to seek death, but there's absolutely no explanation of what was going on. I mean, I think that while the government should carefully review and consider these types of issues, there's absolutely no indication that 13 months was necessary to appropriately consider and review those issues. The facts and circumstances that set out would seem to suggest that that decision could have been reached much more quickly. I think the other, I can't remember, you asked me another question, which now I'm having trouble remembering. I can't remember it either. It couldn't have been that important. Was it the 75 days, but you've had over a year? Oh, it was. It's how you. Thank you. And what I wanted to say about that is I think in all other contexts, when we judge the reasonableness of some of a party's action, we look at the circumstances existing at the time of the action. And the circumstances existing at the time of the government's filing of the death notice on May 29th of 2008, the case was almost three years old. The trial was in 75 days. That motions and disclosures had been made by the parties showing a clear intent to proceed a trial in August. And that the only reason the trial was continued was to give, was over the defendant's desire for a speedy trial and was to give counsel a chance to be appropriately prepared for a penalty phase on which they just received notice. Tamara Phipps for the United States. May it please the Court. Ms. Phipps, would you tell me how long an average, on the average, does the decision-making process take from the time the U.S. attorney recommends to seek the death penalty to the filing of the notice of intent? What's the average? That may be the one question I can't answer. I hope so. I don't know that anybody's put in the record the average. I don't think it matters, though, Your Honor, because I don't think the time that it takes the government to file the notice, it should really be the focus of the Court in assessing the penalty notice. Well, I don't mean to imply that that's the focus. It's just a ballpark idea. You know, there aren't that many of them, and it would seem to me that you'd have, everybody would have kind of, within the DOJ, would have some kind of a ballpark figure, an idea in their mind as to how much time we allow. Well, the defendants may be able to tell you that in their rebuttal argument, because they did attempt to put information about that before the district court, and the district court treated it as irrelevant. I can say, though, that the deliberations in the Department of Justice moved slowly in this case, as they should, given the importance of the question. If I may, before going back to the timeliness of the notice, I'd like to talk about jurisdiction, which wasn't much the subject of the first argument here, because I think the jurisdictional question is an important one, and I think the resolution of the question is mandated by a very well-established principle, and that is the principle that asserted error is not reviewable if there is a remedy for the error on appeal following judgment, and that clearly is the case with respect to an untimely death penalty. An untimely death penalty notice following judgment can be set aside by the court of appeals, or it can be ordered to be set aside, and the death sentence can be vacated, and it can go back down. Well, the circuits have split on this, though. The circuits have split on this, so it obviously isn't a no-brainer to everyone, you know, but, you know, arguably, assuming if you said it can't be reviewed later, then I'm also envisioning a situation on habeas 20 years down the line that some courts saying, well, that right was abused, you know, they weren't given adequate notice, and finding it to be structural error, and then setting aside the whole thing. I think it's virtually inconceivable that an untimely notice of the government's intent to seek the death penalty would be seen as structural error. This is the Ninth Circuit. We still have Johnson and Olano and Nieder out of the Supreme Court, where it has been made pretty clear that structural error is a very limited concept. No, go ahead. Judge Gallagher points out that there are two circuit courts, what is the Fourth and the Eleventh, who disagree with you. And I understand there's another case, the second goes the other way. If this could be, if we could go either way on this, wouldn't it be to everybody's advantage, including the government's, to get a declaration now that your notice was timely? I mean, when you think of the expense of picking a death-qualified jury and everything else that goes with it, plus how it would color plea bargaining and the whole schmear, I mean, wouldn't it make a lot of sense to resolve that now? Yes, Your Honor, that's a valid point. But if we resolve it, we have to have jurisdiction. You have to have jurisdiction in order to do that. And there are two circuit courts that say we do, and one that says we don't. If we could go either way, wouldn't it make, wouldn't it be to everybody's advantage to err on the side of saying we do? Perhaps it would. But the judicial economy, the convenience of the parties don't create jurisdiction. The court needs to identify an explicit grant of a right to stand, not to stand trial, of a right not to endure further proceedings without resolution of whether the government's notice was timely. So you're, so essentially you're making, not to be facetious, but you're making the argument while that would be convenient and might nicely tie a bow up on this, that the pesky old thing called the law says that they don't have a right to an interlocutory appeal. That's exactly right. So are you going to the plain language of 3593, or how are you coming to that argument? That's the only place to go, Your Honor. Midland Asphalt, other cases of this circuit have made it clear that we have to look for an explicit grant of a right not to endure further proceedings without resolution of a question. And there simply is no, there's no grant in the Constitution with respect to this right, certainly. We must look to the plain language of the statute. And the statute, it just doesn't contain when it says the government shall file the notice a reasonable time before the trial or before acceptance by the court of a guilty plea. The Fourth Circuit found a grant of a right not to stand trial without a timely notice in that language. I submit to you it simply isn't there. We do have a collateral order doctrine. Yes. Give me an example of what you think would be a collateral order. Well, the collateral, with respect to the third requirement of collateral order doctrine, which is what is at issue here, we, this is unlike those instances in which the Court has found an issue substantially, I'm sorry, effectively unreviewable on appeal because the right could not be undone. Those cases are limited in a number, but there are things like defendants being shackled during the trial. An appeal following judgment can't unshackle them during the trial. Well, I don't, but see, I don't think you're ever going to, I think if you can't appeal this from an interlocutory standpoint, I see the arguments that appellants are making from the standpoint they're not going to go to trial unprepared on a death penalty case. So essentially, unless they want to be incompetent counselor, unless they want to roll the dice, they're always going to err on the side of giving short shrift to their client's desire to have a speedy trial in terms of to have a prepared trial. So if it's, it would be reviewable, but I'm going to bet that 99 out of 100 times always they're going to ask for a continuance, and so that being said, then they're still going to be prepared. So even if they were denied the right, even if there was a denial, it's going to be found to be harmless error, so it's not effectively reviewable, and so you've kind of eviscerated their right to have a speedy trial. I don't see how that concern goes into the jurisdictional consideration, because, again, I think you have to have an explicit grant of a right to avoid proceedings, but let me speak to the heart of the concern that you express. There is nothing wrong with continuance for the purpose of allowing the defendant's adequate time to prepare to defend against the death penalty. That is certainly a continuance in the interest of justice, which is all that speedy trial continuance needs to be. Defendants are afforded their speedy trial right in this case. Well, they kind of want the arrow and the quiver, okay, that, you know, that's sort of the silver bullet. That's the one that you can pull out, because if you could say that, you know, you put me in this selfish choice, I had to ask for a continuance, but if I had gone to trial, you know, but I was hurt because the prosecutor really wasn't ready, but I couldn't take that chance. And see, in the government, when you file charges, you're supposed to be ready to go on day two. You know, that's kind of the concept. That's the concept. But in these cases, as a practical matter, involving something as important as death, the common practice, and there's nothing wrong with it, is for the district court to manage the case responsibly. The court must set a trial date within the 70 days so as to avoid speedy trial concerns immediately, and then the court manages the case to allow both sides to have enough time to prepare for the guilt phase of the trial and any death penalty phase of the trial. And there's nothing wrong with the defendant's counsel having wisely said, we need more time to prepare, and the district court, in its prudence, giving them that additional time. I do want to say, though, that it is not clear from this record to me that the defendants were ready for the August 12th trial date but for the death penalty notice that occasioned additional work by them. If the court looks at the record, the court will see that, or just the docket, which is part of in the record excerpts, the court will see that the defense are still filing all kinds of motions, motions related to exclusion of evidence, DNA testing, motions contending that the government has destroyed exculpatory evidence. There's all kinds of stuff going on after these proceedings concerning the death penalty notices that have nothing to do, as far as I can see, with death penalty. They simply weren't ready. And I will say, I must say, with respect to the continuance itself, the continuance from the August 12th trial date to the March trial date, the court, the stipulation in order for continuance recognizes, I mean, it certainly was continued because the defendants said now we need more time to defend against the death penalty. But it also was continued, and I'm quoting, to allow the defendants to review voluminous discovery in this case, investigate and prepare to defend the allegations in the death penalty notices, and to prepare mitigation in case the case proceeds to a penalty phase. So there was recognition that there was still the defendants still needed time to examine discovery. And the defendants did us a favor of filing supplemental record excerpts that show all kinds of motions. Well, let me ask you this. So, I mean, those are your arguments as to why we should adopt, is it what the Fourth Circuit's approach to reasonableness to, so we don't encourage gaming, and that they actually were preparing all along and not to use the 75 days. But going back to your argument that 3593A, that the plain language, essentially they're arguing that the defendant has a right not to stand trial without adequate notice, right? Correct. And so you're saying that the plain language doesn't say, it doesn't say anything about that. Oh, no. It says exactly that. The defendants, no, I'm sorry. The defendants are entitled to a reasonable notice before the trial. And I think that. But the interlocutory argument is the right to not stand trial without adequate notice. Without an appeal. I'm talking about whether this Court has jurisdiction to entertain an appeal. In other words, whether they have, in addition to the right to reasonable notice before trial, a right to test the timeliness of that notice in this Court before going to trial. And I'm saying that the statute contains no such grant. Is there anything in the legislative history that talks about the right not to be tried absent reasonable notice? There's nothing. Is March 17th still the trial date? No. The trial date has been continued over to June on the motion of Mr. Williams based on, I understand, scheduling problems of his counsel and also another matter that's under seal, which I can't inform the Court. Will the trial be stayed pending our ruling or will it go forward? Or do you know what would happen? It would be stayed pending your ruling, I should think. But it has been set over to June. Okay. Anything else, Ms. Phipps? Well, a couple of things. With respect to jurisdiction, I'd just like to say that I think that there are serious flaws in the Fourth Circuit's reasoning, apart from the fact that there's no, and the most important fact, that there's no explicit grant in the statute. It's also inconsistent with concepts of review for harmless error and correction of error in the district court. I think the continuance, if the Court should see this as untimely. I'm sorry. I'm talking on the merits now, not on jurisdiction. If the Court should see the notices as untimely with respect to the 75-day trial date, the continuance. Well, under the Fourth Brightline rule, can't the government get around that simply by asking for a continuance? I should think so. I should think so. And there's nothing wrong with that. The Eleventh Circuit certainly thought there was nothing wrong with that. Mm-hmm.  Thank you. Thank you. Ms. Jackson, you've got about half a minute. We'll round it up to a full two minutes. How's that? That's the kind of magnanimous people we are over here. To answer the question about the – I'm not sure I can answer the question that Justice Mills asked about how long it takes the United States Attorney's Office to make these decisions. But in the appellant's excerpts of records at page 60 – I'm sorry, page 59 and 60 is a declaration of Kevin McNally from the Federal Death Penalty Resource Project, which keeps statistics regarding federal death penalty cases. And in paragraph 5 of that declaration, he talks about the average time between indictment and trial in a federal capital case as being 20 months, and the average time between the notice of intent to seek death and the trial, 11 months. So on average, at the time this declaration was filed, it was approximately 11 months between the time the government would file their notice of intent to seek death and the defendants would proceed to trial. There is an amended declaration at Document 459, Exhibit A, which I think carries the new statistics of 12-and-a-half months. But would that – all right, but you're citing that for the premise that here we're talking 75 days, but here this case didn't proceed to trial within 75 days. So how is that going to be? That statistic is then going to look like the notice of death was, well, two years probably by the time this is all done. Well, that goes back to my argument that the government's conduct and timeliness of the notice – reasonableness of the notice of intent to seek death should be measured like other conduct given the circumstances at the time. And the fact is, is that Mr. Johnson and Mr. Williams were forced to continue the trial over their right to a speedy trial because of the late filing of the notice. There's absolutely no – I haven't heard one explanation for the delay by the government. And I would note the courts discussed to some extent the facts in Wilk, which looks at sort of the totality of circumstances. The facts in Wilk are very different than the facts here. That case was indicted in August. The trial date was in April. And the whole time the lawyer for the defendant was saying that he couldn't possibly be ready by April. Ms. Jax, let me ask you a question. I'm going to ask Ms. Phipps to comment on this. I should have asked her before when she was up, but it just occurred to me. If we were to find that there is a jurisdictional problem, could we interpret your appeal, your opening brief, as an application for a mandamus petition and sort of reach it that way? Would that be doable? Reach the issue as a mandamus and then get to the merits that way? Is that in the ballpark? I'd have to give that some thought. I'm not sure how to answer that. I don't see how that would prejudice you any. Off the top of my head, I don't think that it would. That would be better than kicking you out for lack of jurisdiction. I would reiterate, though, I think that interlocutory appeal is essential. I know that, but I'm saying if we go to Plan B. Okay. Thanks. Ms. Phipps, do you have any comment on that last thought? The court is free to reach it on that mandamus if it chooses to treat the appeal as a petition. I think that's a ground rule. Of course, it's standard for the legal side. Okay. Thank you both. Well done, John. The case is submitted at this time. Thanks a lot. Thank you. Thank you.
judges: Silverman, Callahan, Mills